

ENTERED
10/26/2009

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| | ) |
| EASTBOURNE 59/GRAND PARKWAY, LP, | ) CASE NO. 09-36481-H3-11 |
| | ) |
| Debtor, | ) |
| | ) |

## MEMORANDUM OPINION

The court has held a hearing on the "Motion to Dismiss Chapter Case 11 Pursuant to 11 U.S.C. § 1112(b)" (Docket No. 10) filed by Grand Ransom, LLP ("Movant"). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered denying the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

Eastbourne 59/Grand Parkway, LP ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 31, 2009.

Debtor is a single asset real estate debtor. Debtor owns approximately 47.88 acres of undeveloped real property in Fort Bend County, Texas.

Francis Egan, the president of Eastbourne Investments, Ltd., testified that Eastbourne Investments, Ltd. is the sole

member of Eastbourne 59/Grand Parkway, LLC, the limited capital partner of Debtor.  He testified that Eastbourne Investments, Ltd. has an asset portfolio with a book value of approximately $252 million.

Debtor purchased the property from Grand Ransom LLP and Sidney S. McClendon, Trustee, on December 21, 2005.  (Stipulation No. 3, Docket No. 23).  To finance the sale, Debtor executed a note in the original principal amount of $9.5 million, payable to Grand Ransom LLP and McClendon.  The note was secured by a deed of trust with respect to the property.  (Stipulation No. 4, Docket No. 23).

The note, dated December 21, 2005, a copy of which was attached to the Stipulation filed at Docket No. 23, provides in pertinent part:

> **Terms for payment:**
>
> * * *
>
> (e)  A principal payment, in the amount of $1,000,000, together with all interest accrued thereon to such date, shall be due and payable on or before June 30, 2008.
>
> (f)  A principal payment, in the amount of $1,000,000, together with all interest accrued thereon to such date, shall be due and payable on or before June 30, 2009.
>
> (g)  All remaining unpaid principal and accrued interest, together with costs of collection thereon (if any), shall be due and payable on or before the same date in December, 2009, corresponding with the date of execution of this note.

* * *

**Provisions for default:**

In the event of default by Maker (1) in the prompt payment of any installment of principal or interest due under this Note, as evidenced hereby; or (2) in the performance or observance of any of the covenants or agreements set forth in any other document evidencing Maker's obligation hereunder; then, in any such event, the entire unpaid balance of principal and accrued interest on this Note shall, at the option of the Holder hereof, after ten (10) days' written notice from Holder to Maker with opportunity to cure, become immediately due and payable and, except for such ten (10) day notice as herein provided, Maker waives all notices of intent to accelerate, acceleration, default, demand for payment, presentment for payment, protest and notice of protest, the filing of suit hereon for the purposes of fixing liability of Maker hereunder, diligence in taking any action to collect amounts called for hereunder, or in the handling of any securities at any time held by Holder to secure the indebtedness evidenced hereby and all other notices, and Maker further agrees to any substitution, subordination, exchange or release of any of the property securing Maker's obligations hereunder and Maker further consents to any extension or postponement of the time of payment of this Note and to any other indulgence with respect hereto without notice to Maker, Maker's legal representatives, successors or assigns. If, after default, this Note is placed in the hands of an attorney for collection, or if collected through judicial proceedings, Maker shall pay, in addition to the sums referred to above, a reasonable suym as collection or attorneys' fees which, in no event, shall be an amount less than ten percent (10%) of the sums then due and owing as principal and accrued interest hereunder, and all other costs incurred by Holder in collection of the unpaid amounts due hereunder.

(Docket No. 23, at p. 7-9).

On June 30, 2008, the parties modified the terms of the note. The periodic payments were modified, such that $500,000 was due on each of June 30, 2008, June 30, 2009, June 30, 2010,

and June 30, 2011, payment of the unpaid remainder was extended to December 31, 2011, and the interest rate was increased from 7 percent to 8.5 percent.  (Docket No. 23, at p. 11-12).

On February 3, 2009, the parties again modified the term of the note.  The second modification, for which Debtor paid a $30,000 fee, provided that interest-only payments were due on March 31, 2009 and June 30, 2009, that a $500,000 principal payment was due on June 30, 2009, and generally provided that installments of interest were due quarterly.  (Docket No. 23, at p. 20).

On July 7, 2009, Movant gave debtor notice of default in making the June 30, 2009 principal payment, and interest payments for October 1, 2008 through December 1, 2008 and April 1, 2009 through June 30, 2009.  Movant asserted in their notice of default that $5,809,919.00 in principal remained unpaid on July 7, 2009.  (Stipulation No. 7, Docket No. 23).

Egan testified that he believes the value of the property is in excess of $8.6 million.

On August 5, 2009, Movant gave debtor notice of posting of the property for a September 1, 2009 foreclosure. (Stipulation No. 10, Docket No. 23).

Debtor has no unsecured creditors.  The only listed creditors are Grand Ransom and McClendon.  (Stipulation No. 17, Docket No. 23).  Debtor has no income or business operations.

(Stipulation No. 18, Docket No. 23). Debtor has no employees. (Stipulation No. 19, Docket No. 23).

On August 27, 2009, Debtor sought reinstatement of the note, offering immediate payment of the June 30, 2009 principal payment, payment of all past due interest, and prepayment of the interest installment due September 30, 2009 under the second modification. The offer did not include payment of Movant's attorney fees. (Docket No. 23, at p. 33).

On August 28, 2009, Debtor again sought reinstatement of the note, offering immediate payment of the June 30, 2009 principal payment, payment of all past due interest, and prepayment of the interest installments due through December 31, 2009 under the second modification. The offer did not include payment of movant's attorney fees. (Docket No. 23, at p. 35).

On August 28, 2009, Movant countered Debtor's offer, suggesting that Debtor pay the June 30, 2009 principal payment, payment of all past due interest, and prepayment of the interest installments due through December 31, 2009 under the second modification, plus increase the interest rate from 8.5 percent to 12.5 percent, and pay Movant's attorney fees. (Grand Ransom Exhibit 2).

Debtor filed a Chapter 11 plan, and a disclosure statement, on September 30, 2009 (Docket Nos. 27, 28). The plan provides generally, with respect to Movant's claim, that the

claim will be paid in accordance with the loan documents, as they existed prior to default.  The plan provides that claims for compensation will be determined at confirmation, and paid in full on the effective date.  (Docket No. 28).

## Conclusions of Law

Section 1112(b) of the Bankruptcy Code provides:

(b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

(2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that--

>    (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

>    (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)--

>        (i) for which there exists a reasonable justification for the act or omission; and
>        (ii) that will be cured within a reasonable period of time fixed by the court.

(3) The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph.

(4) For purposes of this subsection, the term 'cause' includes--

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
> (K) failure to pay any fees or charges required under chapter 123 of title 28;
> (L) revocation of an order of confirmation under section 1144;
> (M) inability to effectuate substantial consummation of a confirmed plan;

>    (N) material default by the debtor with respect to a confirmed plan;
>    (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
>    (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b)

The Section 1112(b)(4) list of items identified as constituting cause for conversion or dismissal is non-exclusive. See In re Global Ship Systems, LLC, 391 B.R. 193 (Bankr. S.D. Ga. 2007); In re The 1031 Tax Group, LLC, 374 B.R 78 (Bankr. S.D.N.Y. 2007).

The Fifth Circuit held, in Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re: Little Creek Dev. Co.), 779 F.2d 1068 (5th Cir. 1986), that cause for dismissal includes the lack of good faith in filing.  In Little Creek, the Fifth Circuit affirmed the bankruptcy court's determination that a case was not filed in good faith, where there was no going concern to preserve, no employees to protect, and no hope of rehabilitation, except according to the debtor's "terminal euphoria."  The court should consider all the particular facts and circumstances of the case in determining whether the case was filed in good faith. Little Creek, 779 F.2d, at 1073.

However, even one-asset real estate ventures could invoke Chapter 11 in good faith; a venture including undeveloped property might file to protect true owner equity when market

conditions suggest the remedy of a debt restructuring, as opposed to simple liquidation, and the likelihood of prompt resale. <u>In re Humble Place Joint Venture</u>, 936 F.2d 814 (5th Cir. 1991).

With respect to the instant motion, the uncontroverted evidence is that Debtor holds substantial equity in its single asset real estate. Although Debtor has proposed a plan to deal with only one debt, the risk of forfeiture of the Debtor's equity demonstrates a need for financial reorganization. The court concludes that the petition was filed in good faith.[1]

Based on the foregoing, a separate Judgment will be entered denying the "Motion to Dismiss Chapter Case 11 Pursuant to 11 U.S.C. § 1112(b)" (Docket No. 10).

Signed at Houston, Texas on October 26, 2009.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[1] The court notes, however, that the question of whether a petition is filed in good faith, to determine whether cause exists for dismissal or conversion, is logically different from the question of whether a plan is proposed in good faith, within the meaning of Section 1129(a)(3) of the Bankruptcy Code. <u>See</u> <u>In re Madison Hotel Assoc.</u>, 749 F.2d 410 (7th Cir. 1984). The court notes that the plan filed on September 30, 2009 (Docket No. 28) is unreasonably vague as to its treatment of the Debtor's obligation to pay a reasonable attorney fee, and the treatment must be clarified in order to enable the court to make a determination of whether the plan was proposed in good faith.

9